# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROUNCHE GREEN,<br><br>                Plaintiff,<br><br>    v.<br><br>D. PARAMO, *et al.,*<br><br>                Defendants. | Case No. 18-cv-00480-BAS-AGS<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY [ECF No. 10]**<br><br>**AND**<br><br>**(2) GRANTING PLAINTIFF LEAVE TO AMEND** |

      This case stems from Plaintiff Brounche Green's request to receive kosher meals at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California. After being transferred to RJD from another California state prison at which he already had approval for a kosher diet, Defendants required Plaintiff to traverse once more the application and verification process to receive a kosher diet at RJD. At the time Plaintiff filed the Complaint in March 2018, he had already received approval from RJD for a kosher diet nearly seven months earlier in August 2017. Plaintiff claims that the reapplication process and delay he experienced before receiving his religious diet violated his constitutional rights to the free exercise of

– 1 –

religion and equal protection.

Before the Court is a Rule 12(b)(6) motion to dismiss the Complaint in its entirety filed by Defendants V. Acosta, F. Hadjadj, and D. Paramo. (ECF No. 10.) Plaintiff Brounche Green opposes (ECF No. 12) and Defendants have filed a reply (ECF No. 13.) For the reasons herein, the Court grants the motion to dismiss.

## BACKGROUND

Plaintiff Brounche Green is an "Islamic Hebrew/Nuwabian Moor inmate." (Compl. at 33.) Prior to April 2017, he was incarcerated at Centinela State Prison, where he participated in the religious diet program and received kosher meals. (*Id.* at 3.) Plaintiff was transferred to RJD on April 13, 2017. (*Id.*) Plaintiff alleges that at RJD, he was required to re-apply for a kosher diet and waited five months before receiving approval. (*Id.*) As a result, Plaintiff claims that he "was limited on what he could eat not to violate his religious beliefs," he was "forced to scrape up food, which in most instances was not in accord with my pre-approved K meals." (*Id.* at 3, 4.)

Plaintiff filed prison grievance forms on April 4, 2017, April 8, 2017, and May 28, 2017, requesting the kosher diet. (*Id*. at 12, 13, 14.) The first and second forms do not appear to have been received by prison staff. (Compl. Ex. A.) On June 11, 2017, Defendant Chaplain Hadjadj responded to Plaintiff's third grievance and told Plaintiff that he must fill out a new "3030 form" as part of the application process. (*Id*. at 14.) On June 16, 2017, Plaintiff filed a prison appeal. (*Id*. at 33.) On June 17, 2017, in response to Hadjadj, Plaintiff provided a copy of the religious diet card he was issued at a previous prison and wrote that he had already completed four "3030 forms." (*Id*. at 14-15.) On June 20, 2017, Hadjadj responded that Plaintiff must provide an approved "3030 form." (*Id*.) On August 22, 2017, Hadjadj interviewed Plaintiff, Plaintiff's appeal was granted at first level review, and Plaintiff received approval for a kosher diet. (*Id*. at 23.)

Based on these allegations, Plaintiff alleges the RJD has a practice of violating this regulation with all transferred and incoming prisoners who are on religious

– 2 –

mandated meals. (*Id.* at 3.) Specifically, Plaintiff alleges that he "arrived RJD from Centinela pre-approved" for K meals since 2015. (*Id.*) Plaintiff takes issue with being "forced to appeal to receive a religious diet" that he "was already approved for and receiving at Centinela." (*Id.* at 4.)

Plaintiff names as Defendants Chaplain Hadjadj, Warden Daniel Paramo, and Food Manager Victor Acosta. (*Id.* at 2.) Hadjadj is the RJD chaplain responsible for placing inmates on diet programs. (*Id.* at 2.) Paramo is RJD's warden. (*Id.*) Acosta is RJD's food services manager, who Plaintiff alleges is responsible for processing and handling food and religious diets. (*Id.*) Pursuant to 42 U.S.C. § 1983, Plaintiff asserts violations of his First and Fourteenth Amendment rights and he raises a claim pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. 2000cc-1(a). Plaintiff seeks damages and injunctive relief.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89 (2007). A complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). A pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.*

*Pro se* pleadings demand an especially charitable interpretation, but the court

"may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266. 268 (9th Cir. 1982) (citations omitted).

## DISCUSSION

Defendants move to dismiss the Complaint in its entirety on the grounds that: (1) Plaintiff's constitutional free exercise of religion claim is barred by qualified immunity, (2) the Complaint fails to state a plausible equal protection claim, and (3) Plaintiff's RLUIPA claim cannot provide a basis for damages and his claim for injunctive relief is otherwise moot.[1] (ECF No. 10-1 at 6.) The Court agrees.

**A.    Section 1983 Claims**

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Section 1983 offers no substantive legal rights, but rather provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To maintain a claim under Section 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Plaintiff premises his Section 1983 claims on the First and Fourteenth Amendments. The Court considers Defendants' motion as to each claim.

    **1.    First Amendment Right to Exercise Religion**

Plaintiff was required to complete a religious diet re-application process when he arrived at RJD, which resulted in a five-month delay before he received kosher

---

[1] Defendants also specifically move to dismiss Plaintiff's Section 1983 claims against Warden Paramo on the basis that he cannot be held liable under a theory of *respondeat superior*. (*See* ECF No. 10-1 at 6.) Because all the defendants are entitled to qualified immunity, the Court need not address this argument.

– 4 –

18cv480

meals at RJD. He effectively alleges that Defendants were required to honor his prior approval for a kosher diet at a different prison and that RJD's requirement that he re-apply and receive a new verification violated his right to free exercise of his religious beliefs protected by the First Amendment. The Court concludes that because Plaintiff has now shown that this process violates a clearly established right, Defendants are entitled to qualified immunity.

Qualified immunity is a judicially-fashioned "immunity" to Section 1983 suits for government officials. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). This judicially-fashioned doctrine "protects government officials from civil liability as long as, 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has created a two-part inquiry to assess governmental invocations of qualified immunity: a court first asks whether the facts alleged by a plaintiff establish a violation of a constitutional right and, second, whether the right at issue was clearly established. *Pearson*, 555 U.S. at 232. Qualified immunity is not available if a court concludes: (1) the facts alleged or shown "make out a violation of a constitutional right"; and (2) that right was "'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 231 (citations omitted). Through this judicial elaboration, the protection afforded by qualified immunity "safeguards '*all* but the plainly incompetent or those who knowingly violate the law.'" *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (emphasis added)

Defendants contend that Plaintiff cannot show that they violated a clearly established right. For a right to be "clearly established" for purposes of the qualified immunity doctrine, the right's contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[P]laintiff bears the burden of proof that the right allegedly violated was clearly established." *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014) (citation and bracketing omitted). The Court agrees that Plaintiff has failed to establish that any clearly established right has been violated based on this framework.

As an initial matter, the Court observes that the First Amendment guarantees even a prisoner the right to the free exercise of his religion. *Cruz v. Beto*, 405 U.S. 319, 323 (1972). A prisoner has the "right to be provided with food sufficient to sustain [him] in good health that satisfies the dietary laws of [his] religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (per curiam). Thus, the right of prisoners to practice their beliefs which are sincerely held and rooted in religious belief is clearly established. *Malik*, 16 F.3d at 333; *Roberts v. Klein*, 770 F. Supp. 2d 1102, 1115 (D. Nev. 2011); *Shilling v. Crawford*, No. 205CV-00889-PMP-GWF, 2007 WL 2790623 (D. Nev. Sept. 21, 2007) (holding NDOC inmates' religious beliefs, including kosher diets, are protected if they are sincerely held). Allegations that prison officials have refused to provide a healthy diet conforming to sincere religious beliefs can provide the basis for a cognizable Section 1983 claims concerning the alleged denial of a prisoner's right to exercise his religious practices and beliefs. *See Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) (Jewish inmate claiming denial of kosher diet), *cert. denied*, 510 U.S. 1192 (1994); *McElyea*, 833 F.2d at 198 (same); *Moorish Science Temple, Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982) (Muslim inmate claiming denial of proper religious diet). Plaintiff, however, does not and cannot plausibly premise his First Amendment claim on the violation of this clearly established right because Plaintiff received approval within five months of applying to receive a religious diet at RJD. The question for the Court is whether the five month delay violates a clearly established right.

"[T]he free exercise right . . . is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987); *Turner v. Safley*, 482

U.S. 78 (1987); *Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."). A prison regulation may "impinge[] on inmates' constitutional rights . . . if it is reasonably related to penological interests." *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008). Courts typically balance four factors to determine whether a prison regulation is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the prison regulation and the legitimate government interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right will impact guards and other inmates or prison resources generally; and (4) whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives. *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). A prisoner's rights under the First Amendment's Free Exercise Clause are implicated when a prison official, without justification that is reasonably related to a legitimate penological interest, burdens the prisoner's practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur*, 514 F.3d at 884 (the "sincerity test," not the "objective centrality test," triggers application of the Free Exercise Clause); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994).

To the extent Plaintiff is claiming that he had a right not to be subjected to a re-application process at RJD, the Court concludes that such a right is not clearly established. The Ninth Circuit has determined that a prison may require inmates to proceed through an application process in order to receive a religious diet. *Resnick v. Adams*, 348 F.3d 763, 768 (9th Cir. 2003). In *Resnick*, the Court considered the *Turner* test and held that requiring an inmate to complete a written application to receive a religious diet did not unreasonably burden the inmate's right to free exercise. *See Resnick*, 348 F.3d at 770–71. *Resnick* therefore shows that requiring prisoners to

– 7 –

go through an application process for a religious diet is constitutional.

To the extent Plaintiff claims that his alleged five-month delay in receiving approval was unconstitutional, Plaintiff has not pointed to any precedential authority recognizing a right to a speedier application process. Neither has this Court located any case law recognizing such a right. Although not precedential, case law involving delay in approval of a prisoner's request for a religious diet weighs in favor of the Defendants. *See Holiday v. Giusto*, No. Civ. 03-01385-AS, 2004 WL 1792466, at *5 (D. Or. Aug. 10, 2004) ("An 18-day delay in processing [plaintiff's] religious dietary request simply is not a substantial burden, but rather an inconvenience. Moreover, the undisputed evidence suggests that the delay was caused by a verification process which the Ninth Circuit has recognized as a legitimate penological interest."); *Taylor v. Pelican Bay*, No. C 07-639 MHP (pr)., 2010 WL 2671989, at *8 (N.D. Cal. July 2, 2010) (no First Amendment violation after two-month delay, even though plaintiff was previously approved for a religious diet at another prison and required to go through another verification process). Accordingly, the Court concludes that the Defendants are entitled to qualified immunity. Because amendment should be liberally granted and the benefit of any doubt afforded to a *pro se* plaintiff, the Court will grant Plaintiff leave to amend. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

### 2. Fourteenth Amendment Equal Protection Clause Violation

Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment based on an alleged policy "which mandates how inmates transferred from institution to institution shall be accommodated" but which was violated by defendants. (Compl. at 5.) Defendants argue that the allegations fail to state an equal protection claim because Plaintiff alleges that Defendants treat all prisoners the same.

The Equal Protection Clause provides "that no State shall deny to any person within its jurisdiction the equal protection of the laws[.]" U.S. const. amend. XIV.

The Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quotation marks omitted). The first step in a traditional equal protection analysis is to identify a plaintiff's classification or group. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). Plaintiff must show that the law has been applied in a discriminatory manner by imposing different burdens on different groups. *Id.*; *Christy v. Hodel*, 857 F.2d 1324, 1331 (9th Cir. 1988). The next step requires the Court to determine the level of scrutiny with which the Court should review the government conduct. *Freeman*, 68 F.3d at 1187. A heightened standard of review is applied only "when a statute classifies by race, alienage, or national origin" or infringes on a fundamental right guaranteed by the Constitution. *Cleburne*, 473 U.S. at 440. By contrast, classifications that do not involve a suspect class or fundamental rights are subject to the rational relationship test and accorded a strong presumption of validity. *Heller v. Doe*, 509 U.S. 312, 319 (1993).

The Equal Protection Clause protects prisoners from intentional discrimination on the basis of their religion. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citing *Cruz v. Beto*, 405 U.S. 319, 321–22 (1972) (per curiam), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d at 884–85. The Clause "requires the State to treat all similarly situated people equally. Moreover, the Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Shakur*, 514 F.3d at 891 (citation omitted) (quoting *Cruz*, 405 U.S. at 322). To establish a violation, "a plaintiff in a section 1983 claim must show that officials intentionally acted in a discriminatory manner." *Freeman*, 125 F.3d at 737 (citations omitted). A prisoner may prevail on such a claim by showing that he was treated differently based on his membership in a protected class. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998). Equal protection requires a good faith accommodation of a prisoner's rights

– 9 –

in light of practical considerations, but does not mandate that prisons provide identical accommodations to different faiths. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997).

Plaintiff has not alleged that Defendants have imposed different burdens on individuals based on their membership in different protected groups. Instead, he alleged that Defendants have imposed the same burdens—that is, requiring transfer inmates to requalify for religious meals—on all similarly situated inmates. Plaintiff has not set out a plausible Equal Protection Clause in the Complaint and thus the claim, as pleaded, is subject to dismissal.

In opposing dismissal, Plaintiff raises factual averments not pleaded in the Complaint. Specifically, he identifies three inmates that he claims "received [their] meals in approx[imately] 30 days after transferring to R.J. Donovan and alerting officials to [their] religious diet status." (ECF No. 12, at 2.) Normally "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (quotation marks omitted). But "[f]acts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." *Id.* Even considering these new factual averments, Plaintiff does not suggest that the Defendants have imposed different burdens on different groups. Although three specific inmates were treated "better" than he was in that their applications were resolved more quickly than his, there is no indication such differences were based on religion or some other suspect classification. Thus, the Court does not view these factual averments as showing a plausible Equal Protection claim.

Nevertheless, the new factual averments suggest that Plaintiff may be able to allege a different kind of Equal Protection claim based on a "class of one." The Supreme Court has "recognized successful equal protection claims brought by a 'class

– 10 –

of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). If Plaintiff was treated differently than other transfer inmates who were previously approved for a kosher diet without a rational basis to differentiate between them, then he may be able state an Equal Protection Clause claim. *See id.* It is unclear to the Court whether Plaintiff will be able to successfully state such a claim, but the Court finds that it is appropriate to dismiss Plaintiff's claim with leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (noting that "in a line of cases stretching back nearly 50 years" the Ninth Circuit requires that this Court should "grant leave to amend" when adjudicating a motion "under Rule 12(b)(6)," "unless it determines that the pleading could not possibly be cured by the allegations of other facts").

**B.     RLUIPA Claim**

Plaintiff alleges that Defendants are liable under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and he seeks damages and injunctive relief in connection with this claim. (Compl. at 8.) Defendants argue that Plaintiff's claim fails because RLUIPA does not offer monetary damages and any injunctive relief is moot. The Court agrees with Defendants that the claim is subject to dismissal.

The relevant provision of the RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. 2000cc-1(a). The statute applies "in any case" in which "the substantial

burden is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. 2000cc-1(b)(1). Generally, the RLUIPA is "to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). Although the RLUIPA must be construed broadly, the remedies a prisoner may seek for a RLUIPA claim are circumscribed.

In this case, Plaintiff cannot seek damages from any Defendant for his RLUIPA claim. First, Plaintiff cannot seek official capacity damages under RLUIPA from the Defendants because the RLUIPA does not waive California's sovereign immunity. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015); *Elfand v. Cty. of Sonoma*, No. C 10-5692 WHA (PR), 2012 WL 4836944 (N.D. Cal. Oct. 10, 2012), *aff'd*, 591 Fed. App'x 618 (9th Cir. 2015); *Florer v. Bales-Johnson*, 752 F. Supp. 2d 1185, 1205 (W.D. Wash. 2010). Because Plaintiff sues the Defendant officers of a California state institution in their official capacity, his RLUIPA claim is treated as a suit against the state of California and, therefore, sovereign immunity bars his RLUIPA damages claim. Second, Plaintiff cannot seek damages against the Defendants in their individual capacity for his RLUIPA claim either. "RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding and nothing in the statute suggests any congressional intent to hold them individually liable." *Jones*, 791 F.3d at 1031; *Elfand v. Cty. of Sonoma*, No. C 10-5692 WHA (PR), 2012 WL 4836944 (N.D. Cal. Oct. 10, 2012), *aff'd*, 591 Fed. App'x 618 (9th Cir. 2015); *Florer v. Bales-Johnson*, 752 F. Supp. 2d 1185, 1205 (W.D. Wash. 2010); *Shilling v. Crawford*, 536 F. Supp. 2d 1227, 1234 (D. Nev. 2008); *Brown v. Vail*, No. CV-08-5091-JPH, 2009 WL 2253334 (E.D. Wash. Jul. 28, 2009) (order on motion to dismiss). Any claim for damages Plaintiff requests pursuant to RLUIPA is thus subject to dismissal with prejudice.

The only relief Plaintiff could potentially seek for this RLUIPA claim is

injunctive. Plaintiff requests an injunction against delays in the provisions of a kosher diet "upon transfer for extensive periods." (Compl. at 8.) Although Defendants assert that Plaintiff's claim for injunctive relief is now moot, the Complaint fails to establish that the Plaintiff ever had standing to seek injunctive relief.

To establish Article III standing to seek injunctive relief, a plaintiff must "allege either 'continuing, present adverse effects'" of a defendant's past illegal conduct, "or 'a sufficient likelihood that [he] will again be wronged in a similar way.'" *Villa v. Maricopa Cty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974), *and City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (a plaintiff seeking prospective injunctive relief must establish a "real and immediate threat of *repeated* injury" (emphasis added)). Plaintiff had received approval for his kosher diet at RJD *before* he filed the Complaint. (*See generally* Compl.) He does not identify any continuing adverse effects from the RJD verification process. There is also no suggestion in the Complaint that Plaintiff faces an immediate threat of transfer to another CDCR prison facility where he would be subject to another re-verification process with the delay he alleges in this case. Accordingly, the Court concludes that Plaintiff lacks standing to seek injunctive relief. Plaintiff's RLUIPA claim is dismissed to this extent.

## CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. (ECF No. 10.) The Court **DISMISSES WITH PREJUDICE** Plaintiff's RLUIPA claim for damages. All other claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is **GRANTED LEAVE TO AMEND <u>no later than December 20, 2018</u>**.

If Plaintiff chooses to file an amended complaint, the amended complaint **<u>must be complete in itself without reference to his original pleading</u>**. Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard*

– 13 –

*Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."). Furthermore, any amended complaint Plaintiff files must comply with the requirements of Local Civil Rule 8.2 governing complaints filed by prisoners under § 1983, which provides:

> "Additional pages not to exceed fifteen (15) in number may be included with the court approved form complaint, provided the form is completely filled in to the extent applicable in the particular case. The court approved form and any additional pages submitted must be written or typed on only one side of a page and the writing or typewriting must be no smaller in size than standard elite type. **Complaints tendered to the clerk for filing which do not comply with this rule may be returned by the clerk, together with a copy of this rule, to the person tendering said complaint**." S.D. Cal. Civ. L.R. 8.2 (emphasis added).

**IT IS SO ORDERED.**

DATED: November 20, 2018

Hon. Cynthia Bashant
United States District Judge